Good morning, Your Honors. May it please the Court, Harini Raghupati, Federal Defenders of San Diego, for Mr. Nahim Aguilar-Sanchez. Mr. Aguilar's conviction must be reversed and the indictment against him dismissed because the entry of his 1998 removal order was fundamentally unfair. There is only one question remaining in this appeal, whether at the time of the 1998 removal hearing Mr. Aguilar was eligible for pre-conclusion voluntary departure, notwithstanding his statement at page 81 of the ER that he lacked $225 to voluntarily pay his way to Mexico. The answer is yes. Under Chevron Step 1, Congress has spoken clearly on the matter in drafting the pre-conclusion voluntary departure statute. An alien does not have a burden of production to demonstrate ability to pay to be eligible for relief. But he does have to be able to pay, correct? Correct. He does have to pay his way out of the country, correct? Correct. The statute has an express requirement. Hang on. Forgetting the burden of production for a second. Burden of production had to do with going forward with evidence, things of that nature. So he does have a burden of production, let's say. But if he declares, this is a little counterfactual, but if he declares, look, I don't have the money to pay my way out of the country to voluntarily depart, he can't do it, can he? Either pre or post. If he declares that he doesn't have the money, he's still eligible to apply for relief. He can apply for it, but he can't have it. In other words, if you tell the IJ I don't have any money to pay my way out, it doesn't matter if it's post or pre. You don't have any money. You can't pay your way out. Is that right? Well, that's ultimately correct, but that's part of the relief that's provided. The statute provides that an alien may voluntarily depart at his own expense. That comes at the issuance of relief when the alien is ultimately leaving the country. If he fails to depart at his own expense within the prescribed period of time, there's separate enforcement. That's not what the statute says. The statute says you're entitled to pre-departure if you can pay your way out of the country. Right? Doesn't it? Well, the statute says that you're permitted to voluntarily depart at your own expense, but then the subsequent part of the section makes clear that if the alien is not deportable under sections 1227A2A3 or 1227A4B, so the only two requirements to be eligible to apply are that you not have a felony for aggravated felony or you not have a conviction for a terrorism-related crime. If you don't have either of those convictions, then the IJ has a mandatory duty to advise you of your eligibility for relief, and you're entitled to apply for it. And that confirms that the purpose of voluntary departure, which is to allow immigration judges to quickly and efficiently dispose of cases on their docket, they are not supposed to concern themselves with an alien's ability to pay. That enforcement mechanism comes downstream. If they fail to depart... Let me ask you this question. Why have to go through a whole proceeding and, you know, I guess you have to show good moral character that you otherwise qualify and waste all that time before you find out whether or not somebody has the financial means to leave the country? Why can't you just deal with that issue right up front instead of doing it at the end of the line? What difference does it make? Well, there's two responses to that. One, for unrepresented aliens who don't have access to counsel, and in Mr. Aguilar's case, this was his first time in immigration proceedings, he has a procedural due process right to be informed of his eligibility so that he knows that he's entitled to such relief, that such relief will enable him to depart the country in lieu of a removal order, and that one of the requirements is that he has to be able to pay for relief. So that visal is necessary so that he has the requisite information to make an informed decision. No, no, no. You're talking about something different. You're talking about what type of advice ought to be given to somebody in his situation. I'm very much concerned about that. That might be your strongest argument, that he hasn't been properly counseled, but I just don't know why we have to get caught up in pre-conclusion, post-conclusion, when the question can be asked right off the bat. Do you have the financial means to pay? As long as he's properly advised of the consequences, I think that's a different issue. Because unlike in the post-conclusion statute, which does have an alien must demonstrate by clear and convincing evidence that he has the means to pay, there's no such requirement in the pre-conclusion statute. You're right up front. Why do we want to waste time and wait until the end of the line before we find out whether he has the ability to pay? Maybe I'm not understanding something about how this process works. Because even if the alien answers that he lacks the ability to pay at the immigration hearing, he doesn't have the $7 or the $225 in this case to pay for his travel, he has a certain period of time before he has to voluntarily depart at his own expense. And it's possible that he can obtain the necessary funds to depart at his own expense. That's a different issue. I mean, the immigration judge could say, look, I'll give you some amount of time. I'm concerned about what I think to be inadequate advice and counsel. I'm going to ask your adversary a lot of questions about that, whether this person was properly informed in what type of advice and counsel ought to be given. He's not represented by counsel at that stage, is he? Right, he's not. Does he get assigned counsel afterwards? How does that work? No, he has the opportunity to obtain counsel at his own expense at the initiation of proceedings. But given that he's an indigent, in this case he was an indigent in immigration proceedings, he waived his right to obtain counsel at his own expense because he didn't have the funds to secure counsel. So he proceeds without counsel? Correct. He has no opportunity to have counsel available? Not at the government's expense. It's up to him to obtain counsel. To afford to pay for counsel. Right. I would point the court to the post-conclusion voluntary departure statute. And I think it's important because it shows in that statute Congress expressly provided for an alien to make a showing by clear and convincing evidence that he had the means to depart. Are you referring to the regulation? I'm referring to the statute 1229C, it's B1D. It says that an alien for post-conclusion voluntary departure, the alien must establish by clear and convincing evidence that the alien has the means to depart the United States and intends to do so. Does that mean that in the pre-conclusion proceedings the alien has a lesser burden? Well, what that means is that there's an omission of that language from the pre-conclusion statute and that omission has to be read as intentional. That Congress knew how to provide a burden of production or an evidentiary burden on aliens. Right. In the post-conclusion proceedings he has to show it by clear and convincing evidence. Correct. In the pre-conclusion proceedings, what's the rule? In the pre-conclusion... Section A says he has to be able to depart at his own expense, so I presume there would have to be some kind of showing that's less than by clear and convincing evidence. No, the statute doesn't provide for any showing. So what does the judge, just flip a coin or what? No, the judge has to make a determination of whether the alien has an aggravated felony conviction or a terrorism-related conviction. That's the if language in 1227A1. What about at the alien's own expense? That is part of the relief and that is enforced by downstream. If the alien fails to depart within the prescribed period of time at his own expense, then the grant of voluntary departure automatically becomes a removal order. Where do you get that from? That's in subsection D of the statute. Well, sure, if he doesn't depart at his own expense, they can do something about it. That's true. But that doesn't tell us that Congress has to say, and there's this element you have to prove every time it sets forth a section or a line, it says he can depart at his own expense. He must depart at his own expense. You may give it to him. He can depart at his own expense. And he says up front, I can't do that. Well, I have two responses to that. One, I think that's why the post-conclusion statute, the post-conclusion form of relief is important to look at because when we interpret statutes, we have to look at the statute as a whole. Let me ask you this. What is the I.J. supposed to do at the pre-conclusion stage? Not ask any questions about his ability to pay? I just don't understand what you're saying. The I.J. is supposed to determine if the alien has a conviction for an aggravated felony or for a terrorism. He's not supposed to say anything about his ability to pay at that stage? That only comes afterwards? Is that what your position is? Yes, my position is those are... So you have to go through a whole proceeding. You have to show what else? Good moral character, what else? Those other conditions, right? The only conditions are that they not have an aggravated felony conviction or a terrorism-related conviction. They have to withdraw their application for any other form of relief. But at the post-conclusion stage, what happens after the pre-conclusion? Explain to me what the process is after that. After the I.J. makes a determination, given the lack of those two types of convictions I've described, the I.J. then has a mandatory duty. It's prescribed by regulation and by procedural due process to advise the alien of his eligibility for relief. The alien then makes the application and will present his favorable equities in support of that relief. He has to present the equities. Correct. So there's going to be a hearing where he's going to have to show that his equities tip in his favor. Well, why go through all of that unnecessarily if he doesn't have the ability to pay in the first instance? Because, as I mentioned, without the advisal, the eligibility determination is what triggers the advisal. Only if an alien is eligible does the I.J. have a duty to advise. If there's no advisal, then the alien doesn't know what relief he's entitled to and what factors would warrant a favorable exercise of discretion. So that advisal is necessary for... It seems to me that if he's properly counseled. I have problems with that, but we'll talk about that soon. If he's properly counseled right up front, he knows what his rights are, he knows what his obligations are, and why can't there be a determination at that particular time, assuming that he's properly counseled by the I.J.? What's wrong with that? Because it's not provided for in the statute and the agent... So we're going to have a whole hearing about the equities and waste all that time before we get to that point, right? It actually isn't a waste of time because it promotes the I.J.'s streamlining of the docket by not having to concern themselves with an alien's ability to pay. They can go ahead and dispose of the case, grant voluntary departure. It seems that they're spending more time that could be unnecessary. In any event, I have your position. Thank you. Thank you. Can we hear from the government? With the indulgence of my colleagues, I'd like to just ask you specifically... Let me just get your appearance for the record. Absolutely. Your Honors, may it please the Court. Matthew Gardner on behalf of the United States. Okay. Judge Block. Do you think that this person was properly advised and counseled by the I.J. in the 16 minutes that he spoke to this group about what the consequences are and how you would go about getting $225? Look, he says, do any of you have the money to pay your way to pay voluntarily to Mexico? That would be about $225. I probably would have to answer that question, no,  He might have said, well, I don't have $225 now. Don't you think that he should have been given better advice that you have to have $225? Do you have it now? Can you get it tomorrow? Do you have the means to be able to get it? And then I look through the record here, and I'm disturbed by this because we do have the advantage of the pre-sentence report. This wasn't before the I.J. at that particular time. But it seems to me that this guy was going to be absolutely otherwise qualified that all the equities tip in his favor. He was 16 years old when he came to this country. His father was here. He attended high school in Pasadena. He married the daughter of his high school soccer coach. He did his burglary here. They had a child. He did his forgery here. He did a couple of bad things after that, yeah. But as far as when this particular thing happened, which is what I think we have to deal with. Correct. They moved to Minnesota. He was divorced. In other words, he's been here for many, many years. There's some indication that he actually was working here. If he was properly counseled, he may have had every opportunity to reach out to all these people he knew over the 12 years or so that he was in this country to get $224. Do you think he was given the proper advice here? I think the I.J. did his job correctly here, yes. And I think that the I.J. made the proper threshold statutory inquiry as to whether or not Mr. Aguilar Sanchez had the ability to pay. I think it was a straightforward, factual question that he asked him. That question, you think, was fine. That's all the advice. There is law out there that supports the theory or the proposition that has to be some adequate advice given by the I.J. about voluntary deportation, correct? Yes, that's correct. Right. And you say this is all that's necessary that satisfies due process. In this case, yes. That's my position. Why? I apologize. Why? Why do you think that's sufficient? I can't think of anything less sufficient. This was a simple, factual question. He was not asking Mr. Aguilar Sanchez to knowingly waive or give up any rights. This was a different inquiry than that. He was simply asking him a factual question. Do you have the funds? In contrast, what I'm not saying- On him at that time? He didn't specify. He was simply saying- You need a little bit more information that, you know, here's what you need in order to qualify for voluntary deportation. At the end of the line, you're going to have to be able to pay your way. I don't know whether you have the money on you now. Can you raise it? Do you have the means to do this? He has family all over the place. There are two possibilities here. What happened in this case is that, as I said, this was a simple, factual threshold inquiry. What I concede did not happen is that Mr. Aguilar Sanchez was advised of what voluntary-preconclusion voluntary departure entailed, what the benefits were, what the burdens were. I concede that the immigration judge did not do that in this case because he didn't have to. And it's because he made the initial threshold inquiry. I would contrast- The question itself is ambiguous. It could mean do you have the cash on you now or can you get it- I'm reading the question to answer do you have the funds available to possibly be able to do this. Okay, that's one way to read it. What about the other possible reading? Do you have the funds on you now? I don't know. Let's suppose it's ambiguous. Just humor me for a second. Let's suppose it's ambiguous. Then what do we do? I think if he did not have the funds on him at the time, it would delay the proceedings and he would then have to- That's why he answered no. If you could interpret the question as do you have $225 on you right this minute, that's the way it could be interpreted. And if he says no, what do we do with that? I think at that point he's ineligible for pre-conclusion voluntary departure. I think the policy behind the statute- You've got to have the cash on him at the time? Be able to have the funds readily available. Okay, but that's a different question. If the question can be interpreted as do you have the funds on you now? If it can be interpreted that way- I see your question. No, I think an alien could potentially be eligible for voluntary departure if they had the means to be able to raise the funds in some sort of short period of time. Although that does, again, cut against the policy of the statute to delay this. Because the policy is to have this be a costless, effective removal, to delay it for him to have time to call in witnesses perhaps and go through the process of- I personally have no problem with having this question being asked initially. I don't understand the logic of having to go through the equities of the hearing and then find out whether he has the money. If he knew about the need to have the money, it would give him some window of opportunity to raise the money. So I don't have any problem with that question coming up front. I don't know how my colleagues feel about it, but I think you have to give this guy fair notice about what the consequences are and what voluntary deportation is all about and to give him some opportunity to raise the money. This guy could have possibly gotten the money. He's been in this country for years. He has children. He has family here. The IJ didn't make any inquiries about that at all. And also he spoke to them as a group. You know, three people lined up, boom, boom, boom, you know, and he then asks another question which troubles me initially. I don't know why. Do any of you have close relatives like a mother, father, wife, children, brothers or sisters who are citizens of the United States or lawful permanent residents? Maybe he thought that that money would have to come from somebody like that. Who knows what that question was all about. I think that I would contrast this with Santos Lagunes, a case cited by the defense in this case where Judge Lorenz from the Southern District of California contrasted Martinez Valdez. In that case, the immigration judge inquired of the alien something to the effect of it would be about $300 for you to depart in this case. Do you want to pay for this or would you like to have the government pay for this? And the alien in that case gave a very sensible conclusion, well, I'd prefer the government to pay for it. In that case, he didn't know and was not advised by the immigration judge, do you have what the benefits were of voluntary departure. He was answering in a vacuum. And the question by the IJ, and I think this is the critical difference, was misleading. He didn't inform him that there were potential benefits. I would contrast that with the IJ's question here, which was a plain factual question. It's saying, do you have the funds available to do this? I was saying that, look, you know, have you been in this country? I see you've been here for 15 years, you have family, you have children, your father is here, you've been working here, it's very possible that you could raise this money and I'll give you an opportunity to do that if you want me to do that. How about giving some effective advice and fairness to this person? I think that would have been an excellent inquiry for the immigration judge to make. I don't think due process requires it. I think the question that he asked was a plain factual question. Do you have the funds to depart on your own? Counsel, does one put any weight on the word may in this? Well, it says that the IJ may grant this. Has that essentially been interpreted to shall, let's say, in the post-departure thing? If you meet the criteria, whatever they are, you shall, may mean shall in this context or not? I'm just asking. I think may from where you're asking for it is that the IJ has discretion once the merits of the voluntary deportation have been a departure, I apologize, have been fleshed out. The IJ at that time, it's in his or her discretion to determine whether or not this individual meets it. So I think that that's where the may, they, is that where? Well, that's on the post, but on the pre it also says may. Forgetting the on expense, let's say the person meets the other criteria, which are statutory criteria. It says he may. Has that pretty much been taken to mean shall? No. This is, I'm sorry, I just want to make sure I'm understanding the question. The rest of that portion is may grant voluntary departure. Is that the portion you're referring to? Yeah. And I think the answer is no, it's not shall. I think that immigration judge retains discretion at that point to, based on the individual before them, to either grant voluntary departure or not. For post-conclusion voluntary departure, the alien has to make an affirmative showing of good moral character. And it's a lesser burden for pre-conclusion voluntary departure. Do you think that he would have met, possibly met that requirement in this particular case? No. It seems like he rings the bell here. The only thing he had was a driver while intoxicated charge. I mean, otherwise he has a family here. If that was explored at a proper hearing, it seems like he's an ideal candidate for voluntary deportation. I agree. I'm conceding he would have met prejudice. At the very least, he might have been able to be entitled to pre-conclusion voluntary departure. At the very least. So, yes, I can see that. Okay. Thank you very much. Thank you, Your Honors. I think you've used up your time. Unless there are any questions, we will submit this case at this time. Thank you. Stand by for the session. All rise. This court, to the session, stands adjourned.
judges: Block, Fernandez, Silverman